WHEELER v. MABREY, APPELLANT.

Contract: BURDEN OF PROOF.—Where cattle were sold at an agreed price, and were subsequently delivered to and received by the purchaser. *Held*, That he must pay for them at that price, unless a different contract was afterwards entered into; and the burden of proof of such substituted contract is on the purchaser.

*Appeal from Jackson Circuit Court.*—Hon. SAM'L L. SAWYER, Judge.

*Karnes & Ess* for appellant.

*Tichenor & Warner* for respondent.

NORTON, J.—This suit is founded upon a contract for the sale of a herd of cattle at an agreed price of twenty-two $\frac{50}{100}$ dollars per head, on which plaintiff claims there is due him from defendant seven dollars and fifty cents per

Wheeler v. Mabrey.

head, on one hundred and fifty cattle. Defendant admits in his answer that in September and December, 1871, plaintiff sold and delivered him a herd of cattle, and that he accepted the same, but denies that the contract price for each and every head was twenty-two $\frac{50}{100}$ dollars. He says that all the cattle were purchased the 26th September, 1871, in the State of Kansas at $22 $\frac{50}{100}$ per head, and were to be delivered by plaintiff to defendant in Dakota Territory, and that plaintiff was to move them at once and deliver them in a reasonable time to defendant in said territory; that all of said cattle were delivered in due time except one hundred and fifty head, which were not presented for delivery till December, 1871; that he refused to receive them at the contract price, and so notified plaintiff; that he agreed to receive them at fifteen dollars per head, and plaintiff, under this agreement, delivered them to defendant; that in February, 1872, he had a settlement with plaintiff, and paid him for the cattle. The allegations of the answer were denied in plaintiff's replication. The cause was tried before a jury, which rendered a verdict for plaintiff for $1125, upon which judgment was rendered, and from which defendant appeals.

It is urged, as a reason for the reversal of the judgment, that the court committed error in giving the following instructions on behalf of plaintiff: 1. The jury are instructed that it is admitted by defendant in his anwer, that plaintiff did, in September and December, 1871, sell and deliver a herd of cattle to defendant, and defendant further admits, that the cattle were purchased at the contract price of $22.50 per head; 2. The jury are instructed that, inasmuch as the cattle were purchased by defendant at the sum and price of $22.50 per head, and were delivered to and received by defendant, the defendant will be compelled to pay said sum per head, unless you believe that after said contract of purchase was entered into, defendant and plaintiff entered into a different contract whereby plaintiff agreed to take a less sum, and it devolves

upon defendant to show this; 3. The jury are instructed that, although the cattle in controversy were not delivered in a reasonable time, yet, as defendant received the same, he will be bound for the contract price, unless you believe, from the evidence, that a different contract was entered into, whereby plaintiff agreed to take a less sum; and before you can find that there was such a different contract, you must find, from the evidence, that plaintiff knew of the same and agreed to take a less price for said cattle.

Defendant's instructions: 1. The jury are instructed that, it is admitted by the pleadings that the cattle purchased of plaintiff by defendant were to be delivered in Dakota in a reasonable time after such purchase, and the jury are instructed that in determining whether or not such cattle were so delivered within a reasonable time, they may take into consideration all the circumstances connected therewith, together with all the evidence in the cause; 2. If the jury believe, from the evidence, that the 150 head of cattle mentioned in the petition were not offered to be delivered to defendant in Dakota within a reasonable time after the sale, then defendant had a right to refuse the same on the contract; and if, thereupon, he did refuse to so receive these cattle on the contract, and informed plaintiff that he would receive the same at fifteen dollars per head, and no more; and if, thereafter, plaintiff directed said cattle to be delivered to defendant, then the plaintiff cannot recover, unless you shall believe, from the evidence, that said cattle were delivered and received under the first contract; 3. If the jury believe, from the evidence, that the 150 head of cattle, mentioned in the petition, were offered to be delivered by plaintiff subsequent to the delivery of the balance of the cattle embraced in the contract, and that defendant refused to receive the same on the contract, but offered to receive said 150 head at $15 per head; and if the jury believe, from the evidence, that plaintiff or his agent had notice from defendant or

his agent, of such refusal, and afterwards delivered said cattle to defendant, then they will find for the defendant, unless they believe, from all the evidence, that said 150 head of cattle were delivered and received under said first contract.

The Court's instruction: And if you find that defendant refused to receive said cattle at the original contract price, but proposed to receive said cattle at $15 per head, and plaintiff, with knowledge of such refusal of defendant to so accept said cattle at the original contract price, and of the proposition to receive them at $15 per head directed delivery of said cattle to defendant, then the presumption is that they were delivered and received at said proposition at $15 per head, and that plaintiff agreed to the same.

It was shown by the evidence on the trial, that defendant, in September, 1871, purchased a herd of one thousand cattle at Abilene, Kansas, of plaintiff, for which he was to pay $22 $\frac{50}{100}$ per head, upon their delivery to him in a reasonable time in Dakota Territory; that plaintiff started the cattle about the middle of September, 1871, in charge of prudent men, and that they reached the Missouri river at a point opposite Dakota Territory in the latter part of October; that 786 of them were crossed over and received by defendant; that one hundred and fifty-nine were unmanageable and could not be crossed in consequence thereof; that plaintiff, under the contract, was to deliver the cattle in Dakota Territory in a reasonable time after the sale, and defendant was to superintend their crossing the Missouri river; that Millet, a partner of Mabrey, superintended the crossing, and left the 159 head in charge of one Dougherty, directing that a chute of slabs should be made to cross them; that one Cohren informed plaintiff in November that the cattle had been abandoned by Dougherty, and he thereupon employed Cohren to go up and cross the cattle and deliver them to defendant. That nine of them froze to death, and the other one hundred and

fifty were turned into Mabrey & Millet's herd by Cohren, about the 10th December, he having crossed them over the river on the ice. Previous to their being crossed, Cohren sent three telegrams to Wheeler, two dated Nov. 11th, '71, stating : " Cattle are here. Millet will not take them." " The cattle are all right. Capt. Millet will not receive them. Can't cross river"; also one dated Nov. 21st, 1871 : " I will cross cattle soon as possible." A letter from Millet, dated Kansas City, Dec. 5th, '71, to plaintiff, informed him that they had succeeded in swimming over the river 786 head of cattle—" the balance I left Dougherty to keep * * * I and Mabrey will be down the 1st December again, and am in hopes they have crossed the cattle in last month, as they were building a floating chute out of slabs, as I told them to do, when your men would start back;" also a letter from Mabrey, dated Nov. 18th, at Fort Sully, in which nothing is said in regard to the cattle in dispute. Cohren, a witness on the part of defendant, testified that plaintiff employed him to take charge of the 150 head of cattle which had not been crossed over the river ; that he crossed them over on the ice between the 10th and 16th of December, and turned them into Mabrey & Millet's herd ; that before delivering them, he had a conversation with Millet, who said he would not receive them as contract cattle, that they had been abused, and had not been turned over at same time as the balance of the herd, and told witness to notify Wheeler that he would take them only at $15 per head. Witness also stated that he notified Wheeler either by telegraph or letter that Millett refused to take the cattle, and was instructed by Wheeler to hold the cattle till the river froze, and to cross them and turn them into Mabrey's herd ; that after the cattle were delivered, he verbally notified Wheeler that Millet had refused to receive them only at $15 per head, to which he replied that he would hold them responsible.

It appears, both from the evidence and pleadings, that there was no question between plaintiff and defendant as

to the mere delivery and receipt of the cattle. This seems
to be conceded in the answer and established by the evi-
dence. The question of difference was as to the terms on
which they were delivered and accepted : the plaintiff
claiming that they were delivered under the contract made
with defendant, whereby he agreed to pay twenty-two $\frac{50}{100}$
dollars per head, and the defendant claiming that he
refused to receive them under that contract, and made a
new contract with plaintiff whereby he was only to pay
$15 per head, and that under this contract they were
delivered and received. This disputed question was one
of fact, properly referable to the jury, to be determined
by them upon the evidence, and unless the court misdi-
rected them as to the law, or so directed them as to lead
their minds away from the issue involved, no cause exists
for disturbing the judgment pronounced on their finding.
It is urged that the court erred in the first instruction, in
telling the jury that the answer of defendant admitted
that plaintiff did sell and deliver a herd of cattle to defend-
ant, and that the contract price was $22 $\frac{50}{100}$ per head.
While the first paragraph in the answer admits the pur-
chase and denies that the contract price was twenty-two
$\frac{50}{100}$ dollars per head, the second clause contains a clear
admission that the cattle were purchased at that price,
and admits the delivery of them, but claims that 150 of
them were delivered under a new contract, he having
refused to receive them under the original contract; so
that we think what was said by the court in reference to
the reception of the cattle, in the first, second and third
instructions, was warranted by the statements in the
answer. While the instructions may be open to some
verbal criticism, taking them all together, as modified
by the instruction given by the court of its own motion,
we think the law of the case was given fairly and in
such manner as not to lead the mind of the jury from
the true issue : the substance of all of them being that, if
the jury believed that defendant received the cattle under

the contract in which he agreed to pay $22 $\frac{50}{100}$ per head, they would find for plaintiff, and if they believed that defendant refused to receive the cattle under that contract, and received them under a contract assented to by plaintiff or his agent, in which he was only to pay $15 per head, they would find for defendant. Judgment affirmed, in which all the other Judges concur except Judge Sherwood, absent.

AFFIRMED.