HARGADINE–McKITTRICK DRY GOODS CO. v. REYNOLDS et al.

(Circuit Court, E. D. Missouri, E. D. November 27, 1894.)

1. CONTRACT OF SALE—ACCEPTANCE OF OFFER—WHAT CONSTITUTES.
 Plaintiff sent to defendants an order for certain cotton warp, at prices named. on board cars at N. Defendants accepted the order, conditioned that the colored warp be accepted on board cars at L. Defendants declined to give any better terms or ship otherwise than as proposed by

them, but stated that they thought they could secure a certain rebate if the goods were shipped via Erie Despatch. Plaintiff directed them to send a specified amount of a certain kind of warp by Erie Despatch, and also to ship a certain quantity of Eureka warps, saying: "If it suits your convenience better, ship the Eureka warps by Erie Despatch, and can make a fair rate, we would be perfectly willing to have you ship the goods that way." *Held,* that plaintiff's last letter was not a positive acceptance of defendants' offer in their last letter, and that no contract was consummated.

2. SAME—UNREASONABLE DELAY IN ACCEPTING OFFER—WHAT CONSTITUTES.
Plaintiff ordered of defendants certain goods. Several letters passed between the parties as to terms, etc., when defendants sent plaintiff their ultimatum. Prior thereto both parties had made prompt replies to letters received, so that at no time more than one day intervened between the receipt of a letter and the posting of a reply. *Held,* that a delay by plaintiff of six days after the receipt of such ultimatum before posting an acceptance of its terms was unreasonable, and defendants were not bound to fill the order.

Action by the Hargadine-McKittrick Dry Goods Company against James E. Reynolds and others to recover damages for breach of contract, in which there was a judgment of nonsuit. Plaintiff moves to set aside the nonsuit. Motion denied.

Eben Richards, for plaintiff.
Seddon & Blair, for defendants.

PRIEST, District Judge (orally). This is an action for damages for breach of contract. The defendants deny the consummation of an agreement. If it exists, it is by virtue of a proposal by the defendants and an acceptance by the plaintiff. On September 14, 1892, the plaintiff, at St. Louis, submitted to defendants at New York an order for certain cotton warp of white and colored variety, at named prices on board the cars at New York. This order was accepted with the modification that the colored warp should be accepted on board the cars at Little Falls, N. J., where the defendants' dyehouses were located. Over this amendment quite an extensive correspondence ensued, in which there appeared an effort upon the part of the defendants, while adhering tenaciously to the modification, to make the burden of the change fall as lightly as possible upon the plaintiff, and urging upon it the advantages of the trade as proposed by them. This correspondence showed, up to and including the defendants' letter of the 26th of September, great promptness of answer upon both sides. The exchange of mail between New York and St. Louis occupied two days. On September 26th the defendants wrote the plaintiff as follows:

New York, Sept. 26th, 1892.

The Hargadine & McKittrick D. G. Co., St. Louis, Mo.—Gentlemen: Your favor of 24th inst. is before us, and we regret to say that it will be impracticable to ship this lot of warp except as indicated in ours of the 17th inst. The price which we there make is an exceedingly low one, and we cannot sacrifice any more of our commissions than we then stated. Our dyehouse is located along the Erie R. R., and the expense of bringing the goods to New York, and shipping via Kanawha Despatch, is more than we could stand. We think if you would permit us to ship via Erie Despatch we could secure a rebate of 10c. per cwt. from tariff rate. Please understand, gentlemen, that we have already made so low a price on these goods that there is

no room for us to assume any part of the freight whatever. Please answer.
The cost to us of shipping via Kanawha Despatch will be about 1/8c. per lb.
   [Signed] .                  Yours, truly,      Jas. E. Reynolds & Co. '

This letter reached St. Louis and was received by plaintiff on the
28th of September. No reply was made until October 4th, a de-
lay of six days, when the plaintiff's vice president, through whom
the order was first given, and by whom the correspondence had been
maintained, wrote as follows:

                                   St. Louis, October 4th, 1892. '
   Messrs. James E. Reynolds & Co., New York—Gentlemen: Please ship us
as soon as possible, of the cheap grade of warp, on order given Mr. Smith,
the following assortment of 60 bales: 15 White, &c.   Send by Erie Despatch,
and get us the best freight rate you can. We would prefer to have these
goods put up in blue papers, without tickets, in the style that you generally
put up the Peerless warps. This is the way we have been having the goods
which we have been running, and would like to put them right into the same
line. Will send the other order for the balance of the goods in time for ship-
ment November first, as agreed. Also please ship us in Eureka warps. 10
White, &c. Please hurry the delivery of these goods as much as possible.
If it suits your convenience better, ship the Eureka warps by Erie Despatch,
and can make a fair rate, we would be perfectly willing to have you ship the
goods that way.
   Very respectfully            Hargadine-McKittrick D. G. Co.,
      [Signed]                     Thos. H. McKittrick, Vice President.

To this the defendants replied on October 6th in substance that
the acceptance came too late.   From the unusual delay in answer-
ing their communication of the 26th September they were led to sup-
pose their conditions were unsatisfactory, and hence had made other
arrangement for the disposal of the goods offered to plaintiff.   Mr.
McKittrick, in accounting for the tardiness in answering the de-
fendants' communication of the 26th of September, stated that one
of the intervening days was Sunday, and one day he was away from
business, and the remainder of the time he had set on foot an in-
vestigation, and was awaiting information, as to the best possible
rates via the Erie Despatch.   The answer of October 4th was given
without gaining further knowledge of the rates.
   Unless a contract exists by virtue of the two letters of September
26th and October 4th, none has been shown.   It is apparent from the
most casual reading of the plaintiff's letter replying to the defend-
ants' of September 26th that its terms are susceptible of a double
meaning; that is, not a frank, clear, and positive acceptance of the
offer contained in the defendants' of the 26th.   There is much plaus-
ible ground for the contention, had the shipments called for in it
been made, that they were made under the terms of the original order
of September 14th,—a contention which the later correspondence
hinted at.   In addition to this, the letter indicated that if the ship-
ments were made via the Erie Despatch the fairness of the rate
would be a matter for future adjustment.   It does not accept posi-
tively, unequivocally, and definitely the terms offered.   It concludes:
"If it suits your convenience better, ship the Eureka warps by
Erie Despatch, and can make a fair rate, we would be perfectly
willing to have you ship the goods that way."   This is not such an
acceptance, even if timely, as would or ought to bind the defendants.

The defendants insist more strongly that the acceptance was not within a reasonable time, and I am of the opinion that this defense is well taken. Up to this time the correspondence had been prompt. Both parties had been ready with and made replies upon receipt of each other's letters. Never more than three days had intervened between the mailing of a letter and the posting of its reply. The defendants had the right, therefore, to presume, inasmuch as their proposal of 26th contained their ultimatum upon the subject, from the unusual delay, that the plaintiff concluded to negative their offer. They would not have been justified in holding goods then ripe for an opening market to await the uncertain action of the plaintiff beyond that time usually and reasonably necessary for the formation and transmission of a rejoinder. Hare, Cont. 340; Pars. Cont. (Ed. 1873) 483; Averill v. Hedge, 12 Conn. 424. Aside from the fact that the parties themselves by their previous correspondence had fixed a reasonable time within which reply should have been made, the plaintiff, by the testimony of Mr. McKittrick, emphasizes the unreasonableness of the delay by preferring invalid excuses. What is a reasonable time must be determined by circumstances and situation of both parties. The defendants were not concerned with, nor could they know of, Mr. McKittrick's absence from business; neither did his inquiry as to the freight rates in the least effect their offer. An excuse that he was hunting a purchaser for the goods the defendants were offering to sell him would have been just as good as the one tendered, and certainly it could not be contended that the defendants' proposition should remain open until the plaintiff could ascertain whether it could profitably dispose of the merchandise they had offered to sell. There are cases and circumstances in which the question of "reasonable time" is one for the determination of a jury, but this, in my opinion, is not one of them. Motion to set aside nonsuit overruled.