N. E. HOLLIS *vs.* ARTHUR P. LIBBY et al., Admrs.

EDWIN C. SWIFT *vs.* Same.

MATTHEW LUCE, JR., Admr., *vs.* Same.

Waldo.    Opinion March 27, 1906.

*Contracts.    Options.    Elections to Sell Must Be Exercised Within a Reasonable Time.*

On July 13, 1897, the defendants' intestate, Isaac C. Libby, made to each of the plaintiffs in the first two cases, and to the plaintiff's intestate in the third case, the following proposition in writing: "Sir: On account of your transferring your 205 shares of stock in the Waterville & Fairfield R. & L. Co. to the Augusta Safe Deposit & Trust Co. for a term of five years from date I hereby agree to buy said stock at the expiration of that term at $4000, optional with you to sell or not."

Each of the parties to whom this proposition was made, shortly thereafter, and within the same month, accepted the same by transferring their several blocks of stock and by entering into a trust agreement with the Trust Company, which, although not entirely in accordance with the stipulation in Mr. Libby's offer, was evidently assented to by the latter and was in accordance with his wishes and desires. Mr. Libby died in October, 1899, and these defendants were appointed administrators of his estate in November of the same year. On February 10, 1904, the counsel for the plaintiffs transmitted to the defendants written notices signed by the several plaintiffs, and dated February 4, 1904, in which they each gave notice to the defendants, as administrators, that each demanded performance by them of the agreement made by Mr. Libby on July 13, 1897, and therein each offered to transfer and deliver to them as administrators all right, title and interest of each in the stock deposited by them in the Safe Deposit & Trust Co.

*Held:* That the proposition made by the defendants' intestate, by the acceptance of each of the parties to whom it is made, ceased to be a proposition merely, and became a valid contract for a sufficient consideration, enforceable against Mr. Libby in his lifetime and against his estate after his death ; that the obligation upon the part of Mr. Libby was to purchase the stock of each of these parties, at the price named, at a time definitely ascertainable from the contract itself, viz : At the expiration of the term of five years from July 13, 1897, if at that time these plaintiffs or either of them, elected to sell this stock for that price; that if these plaintiffs, or either of them, had then chosen to exercise their option of selling under

these contracts, it was their duty, to make such an election, to give the administrators notice thereof and to tender performance upon their part, either at the date named or within a reasonable time thereafter; that February 10, 1904, almost one year and eight months after the time definitely named in the contract, when notice was first given by the plaintiffs to the defendants of their election to sell under the contracts, under all the circumstances of the case, was not within a reasonable time.

Because of this failure upon the part of these several plaintiffs to seasonably exercise the option given to them by the contracts these actions cannot be maintained.

On report.    Judgment for defendants in each case.

Three actions of assumpsit to recover damages for an alleged breach of a contract made by the defendants' intestate, Isaac C. Libby, with the plaintiffs in each of the first two cases and with the plaintiff's intestate in the third case.

These three actions were heard together at the April term, 1905, of the Supreme Judicial Court, Waldo County. The plea in each of these actions was the general issue with the following brief statement:

" 1.    That the alleged agreement, upon which the plaintiff relies and mentioned in his writ and declaration, was at most only an offer or proposition to purchase the stock mentioned therein with a definite date allowed for the acceptance thereof that the plaintiff did not accept the offer or proposition at the time therein fixed : and that the plaintiff did not tender performance on his part within a reasonable time after said date.

" 2.    That being no more than an offer or proposition, the same expired and became null at the death of the intestate, Isaac C. Libby.

" 3.    Defendants will rely on the statute of limitations.

" 4.    That even if there was any cause of action, against the intestate, or against these defendants as administrators of the estate of the said intestate, it accrued more than six years before the suing of the plaintiff's writ, and that the defendants were appointed administrators of the estate of the said intestate and had given due notice thereof, more than eighteen months before the suing out of plaintiff's writ, and that the action is barred by the special statute of limitations, then in force in relation to suits against administrators upon claims

or demands against the estate upon which they were administering, and that this suit, and other proceedings in relation to the same, or in relation to any claim or demand against the estate of the intestate were not instituted within the period of time limited therefor by said statutes."

At the conclusion of the evidence, it was agreed to report the same to the Law Court under the following stipulations:

"By agreement of parties these three cases are reported to the Law Court upon the foregoing evidence, so far as the same is applicable to each of the cases. The Law Court to pass upon and decide all questions of law and fact involved, and to order such judgment as the cases may require. All evidence may be regarded as seasonably objected to with reasons stated and the Court shall consider only such testimony as is legally admissible."

The three several contracts on which these actions were brought are as follows:

"WATERVILLE, ME., July 13, 1897.

"N. E. HOLLIS:

"Sir: On account of your transferring your 205 shares of stock in the Waterville & Fairfield R. & L. Co. to the Augusta Safe Deposit & Trust Co. for a term of five years from date I hereby agree to buy said stock at the expiration of that term at $4,000 optional with you to sell or not.            I. C. LIBBY."

"Any sum of money I may receive for services from said Waterville & Fairfield R. & L. Co. during next five years I hereby agree to divide with N. E. Hollis, E. C. Swift, H. B. Goodenough and Matthew Luce equally as interest on this investm't.

                        I. C. LIBBY."

"WATERVILLE, ME. July 13, 1897.

"MATTHEW LUCE:

"Sir: On account of your transferring your 205 shares of stock in the Waterville & Fairfield R. & L. Co. to the Augusta Safe Deposit & Trust Co. for a term of five years I hereby agree at the expiration of that term to buy said stock at $4,000 optional with you to sell or not.            I. C. LIBBY."

"Any sum of money I may receive for services from the Waterville & Fairfield R. & L. Co. during next five years I hereby agree to divide with N. E. Hollis, E. C. Swift, H. B. Goodenough and Matthew Luce equally as interest on this investment.

I. C. LIBBY."

"WATERVILLE, ME., July 13, 1897.

"E. C. SWIFT:

Sir : On account of your transferring your 205 shares of Waterville & Fairfield R. & L. Co. stock to the Augusta Safe Deposit & Trust Co. for a term of five years from date I hereby agree to buy said stock at that date at $4,000 optional with you to sell or not.

I. C. LIBBY."

The cases sufficiently appear in the opinion.

*Cornish & Bassett*, for plaintiffs.

*Enoch Foster and R. W. Rogers*, for defendants.

SITTING : WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

WISWELL, C. J. The evidence upon which these three cases were reported was taken out at the same time and the cases reported upon the same evidence, so far as it is applicable to the several cases, and they were argued together, the facts being substantially the same in each case. The actions are to recover damages for an alleged breach of a contract made by the defendants' intestate, Isaac P. Libby, with the plaintiffs in each of the first two cases and with the plaintiff's intestate in the third case. The facts are as follows : On July 13, 1897, the defendants' intestate made the following proposition in writing to the plaintiff Hollis.

"WATERVILLE, ME., July 13, 1897.

N. E. HOLLIS:

Sir : On account of your transferring your 205 shares of stock in the Waterville & Fairfield R. & L. Co. to the Augusta Safe Deposit & Trust Co. for a term of five years from date I hereby agree to buy said stock at the expiration of that term at $4000, optional with you to sell or not.        I. C. LIBBY."

Any sum of money I may receive for services from said Waterville & Fairfield R. & L. Co. during next five years I hereby agree to divide with N. E. Hollis, E. C. Swift, H. B. Goodenough and Matthew Luce equally as interest on this investm't.

I. C. LIBBY."

An exactly similar offer, in substance and effect, was made by Mr. Libby in writing on the same day to the plaintiff Swift and to Matthew Luce, the plaintiff's intestate in the third case, except that in the offer to Swift the postscript in relation to the division of any money received for services was omitted, and in this offer the language was " I hereby agree to buy said stock at that date," instead of, as in the other two offers, "at the expiration of that term," both of which differences are immaterial.    Shortly after the date of this proposition, and within the same month, these parties, together with other stockholders in the Railway and Light Company, including Mr. Libby, transferred and deposited their several blocks of stock in this Company to and with the Augusta Safe Deposit & Trust Company, and on the thirty-first day of the same month all of these stockholders entered into a trust agreement with the Trust Company which contained in detail provisions in relation to the holding of the stock, which, although not entirely in accordance with the stipulation in Mr. Libby's offer of July 13, seems to have been assented to by him, and we may assume, for the purposes of these cases, that the stipulation as to these parties transferring their shares to the Trust Co. was complied with by them.

The defendants' intestate died October 12, 1899, and these defendants were appointed administrators of his estate at the November term, 1899, of the Probate Court for Kennebec County, letters of administration being issued to them under date of November 13, 1899.    On November 29, 1899, the administrators caused notices of their appointment to be published and posted, although it is claimed by counsel for the plaintiffs that the notices were not posted in strict compliance with the direction of the Probate Court contained in the letters of administration, but, as our conclusion is not based upon the

statute of limitations, plead by the defendants, it is unnecessary to decide this question.

On the tenth, twenty-first and twenty-second days of May, 1901, these first two plaintiffs and the plaintiff's intestate in the third case, severally filed in the Probate Court their demands and notices to the administrators, wherein they severally recited the contract of July 13, 1897, stated that they had complied with the terms of this contract in relation to transferring their shares of stock to the Trust Co., and, in the notice of the plaintiff, Hollis, said, "Now therefore, I, the said N. E. Hollis, of Braintree, Mass., in accordance with the statute in such cases made and provided, herein and hereby give notice to you as administrators aforesaid: First. That I shall at the expiration of the said term of five years exercise the option to sell to you the said 205 shares of stock for the said sum of $4000 and herein and hereby demand that you as said administrators hold yourselves ready to perform said agreement according to the terms thereof."

In the cases of Swift and Luce the language was the same with this exception that they both say, "I may at the expiration of said term of five years" etc., instead of "I shall" at that time.

Under date of February 4, 1904, the plaintiffs severally gave written notice to the defendants as administrators, that each demanded performance by them of the agreement made by Isaac C. Libby on July 13, 1897, and therein each offered to transfer and deliver to them as administrators all the right, title and interest of each in the stock deposited by each in the Safe Deposit & Trust Co. These written demands by each of the three plaintiffs were enclosed by their counsel in letters to the administrators dated February 10, 1904. Upon the same day, February 4, each of these plaintiffs gave written notice to the Augusta Safe Deposit & Trust Co., to transfer and deliver to the administrators their several blocks of stock in the Railway and Light Company, upon the payment by the administrators of the sum of $4000 for the account of each of the plaintiffs.

Various objections to the maintenance of these suits are raised by counsel for the defendants, only one of which need be considered by us, as that, in our opinion, is a fatal objection to their maintenance.

Let us first consider what the rights of all of these parties were under the proposition of the defendants' intestate dated 13 of July, 1897. This proposition, by the plaintiff's acceptance of the conditions stated therein as a consideration ceased to be a proposition merely, and became a valid contract for a sufficient consideration, enforceable against Isaac C. Libby in his lifetime and against his estate after his death. The consideration named in the proposal was that each of the parties to whom the proposal was made should transfer their respective blocks of stock to the Augusta Safe Deposit & Trust Co. This they did, and, although as we have seen, the trust agreement between the Trust Company and these and other stockholders differed somewhat from the terms of the proposal, it was, we think, only an elaboration of the terms briefly stated in the proposal, and was evidently not only assented to by Mr. Libby but was in accordance with his wishes and desires. This proposal then by such acceptance, became a valid and enforceable contract. The obligation upon his part was to purchase the stock of each of these parties for the sum of $4000 at a time definitely ascertainable from the contract itself, in the cases of Hollis and Luce, at the expiration of a term of five years from July 13, 1897, in the case of Swift "at that date" viz: At the expiration of the term of five years from July 13, 1897, if at that time these plaintiffs or either of them, elected to sell the stock for that price. The obligation upon the part of Mr. Libby was not to purchase the stock before that time, nor after that time, but at that date, or at the expiration of that term. The date thus definitely fixed in each of the three contracts was consequently July 13, 1902.

As to the rights and duties of the several plaintiffs under this contract, the question is not as to when they should accept and signify their acceptance of a proposal made by Mr. Libby, since, as we have seen they had already done this shortly after the proposal was made. There was no obligation upon the part of the plaintiffs to sell at that or at any other price, but the contract expressly gave them the right of election, the option to sell or not as they or either of them might then elect. And if these plaintiffs, or either of them, had then chosen to exercise their option of selling under these contracts, it was their

duty, to make such an election, to give the administrators notice thereof and to tender performance upon their part, unless such tender of performance became useless or unnecessary by reason of the conduct or reply of the administrators, and all this should have been done either at the date named or within a reasonable time thereafter. The cases show that the plaintiffs made no such election and gave no notice of such election to the administrators until the time that their written demands for performance by the administrators, and tenders of performance upon their part, were sent to the administrators by the plaintiffs' counsel on February 10, 1904, almost one year and eight months after the time definitely named in the contract.

This mere statement of the length of time that the plaintiffs allowed to elapse before taking affirmative action in the premises is sufficient to show that they did not exercise their option within a reasonable time after they had the right to do so, and after it was their duty to do so, if they desired to hold the estate to a performance of the contract. What is a reasonable time under the circumstances of any case may not always be an easy matter to determine, that one year and eight months, under the circumstances of this case, was very largely in excess of such a time is, we think, beyond question.

The determination of what is a reasonable time in a given case depends upon a consideration of all the circumstances of the case. This court has declared in several cases that a reasonable time is such time as is necessary conveniently to do what the contract requires should be done. *Howe* v. *Huntington*, 15 Maine, 350; *Saunders* v. *Curtis*, 75 Maine, 493; *Chapman* v. *Dennison Company*, 77 Maine, 205. The circumstances of this case have no tendency to show that the plaintiffs' demands for performance of the administrators and the tenders of performance upon their part were made within a reasonable time, upon the contrary they have quite the opposite effect. Nothing had to be done by these plaintiffs but to make their election to sell, notify the administrators thereof, and tender performance upon their part; they had all the intervening time, five years, to consider what that election should be; they could have done all that was required of them to do upon the date ascertainable from the contract, July 13, 1902, as well as in February, 1904.

Moreover, the estate of Mr. Libby was in the hands of the administrators appointed in November, 1899, a fact well known to the plaintiffs and which should have been a sufficient reason why they should have exercised some diligence in exercising and making known their election to sell, since it is a well recognized policy of the law to insure the speedy administration and distribution of the estate of decedents.

The demands or notices to the administrators filed in the Probate Court in May, 1901, cannot be considered as elections upon the part of the plaintiffs to sell, since the obligation of Mr. Libby was not to purchase during the period of five years but at the expiration of that term, and the election or option of the plaintiffs was to be exercised if at all on July 13, 1902, or at least, within a reasonable time thereafter. And these notices were not given for that purpose. In one notice, the plaintiff, correctly recognizing the time when he should avail himself of his option said, "I shall at the expiration of said term of five years exercise the option to sell to you" etc. and the other two plaintiffs said, "I may at the expiration of said term of five years" etc. They all evidently recognized the fact that the election must be exercised at or after the date named and not before, and that at that date, or after, they still reserved the right to do in this respect what they chose to do.

These notices were given for an entirely different purpose. As we have seen the administrators caused notices of their appointment to be posted and published on the 29th of November, 1899, under the statute then in force, Public Laws of 1899, chapter 120, actions against executors and administrators had to be commenced, with certain exceptions, within eighteen months after notice given by the administrator of his appointment. By another section of the same chapter, it was provided, that when an action on a contract does not accrue within said eighteen months, the claimant may file his demand in the Probate Court within that time, and the Judge of Probate shall direct that sufficient assets shall be retained by the administrator to pay whatever is found due on such claim. These demands or notices were filed in the Probate Court in accordance with this provision of the statute and proceedings were had in the Probate Court

thereon in accordance with the statute. But further discussion of this question is unnecessary because the counsel for the plaintiffs do not rely upon the filing of these demands for this purpose, and the only allegation in the plaintiffs' writs of demands for performance and tenders of performance by them, is that such demand and tender was made in each case on February 11, 1904.

Because of this failure upon the part of these several plaintiffs to seasonably exercise the option given to them by the contracts these actions cannot be maintained.

*Judgment for the defendants in each case.*