J. P. STEVENS & CO., INC., APPELLANT, *v.* GREAT FALLS PAPER CO., RESPONDENT.

(No. 8,241.)

(Submitted November 16, 1941. Decided March 5, 1942. Opinion on Motion for Rehearing filed June 19, 1942.)

[126 Pac. (2d) 827.]

*Mr. A. H. Gray*, for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Messrs. Cooper, Stephenson & Glover*, for Respondent, submitted a brief; *Mr. Alexander Blewett, Jr.*, of Counsel, argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal by the J. P. Stevens Company from a judgment in its favor wherein the Great Falls Paper Company was allowed to prevail upon an affirmative defense and a counterclaim which reduced the amount of the judgment.

The controversy arose out of a course of dealings between the two companies in regard to the sale of certain toweling. The evidence consisted almost exclusively of a series of letters passing between the companies. On August 3rd, 1939, the paper company wrote the following letter:

"J. P. Stevens & Co., Inc.

"261 Fifth Avenue

"New York City, New York.

Attention: H. C. T. Hough

"Dear Mr. Hough:

"The State of Montana has requested us to bid on linen crash toweling................18″ wide.

"Last year we bid on Stevens 'P' Linen Crash toweling and secured some of the business.

"Will you kindly bid on the quantities as follows:

"3000 yards bleached

"2700 yards unbleached

"350 yards of the unbleached is without border. Kindly give us the approximate yardage per bolt and approximately, the gross shipping weight per thousand yards.

"We await receipt of your sample, quotation, and the gross shipping weight by return mail and oblige.

"Thank you."

In reply to this letter there appears the following, dated August 7th:

"Great Falls Paper Company

"Great Falls, Montana.

Attention: Mr. J. J. Flaherty

"Gentlemen:

"We have yours of August 3rd, and quote you on Stevens 'P' Crash—12½c for the Brown and 13c for the Bleached.

"The Bleached, without border, is priced the same as above. We do not make the Unbleached without border.

"The borders are made in Green, Blue, Red and Gold; and the bolts are 50 yards.

"In accordance with your request we are enclosing sample herewith."

No other correspondence appears between the companies until September 12th, when the paper company wrote a letter to the Stevens Company reading in part: "Please ship us—per instructions below, the articles specified below." Then follows a list of various types of toweling itemized at the price per yard set out in the letter of August 7th. On September 15th, in reply, the Stevens Company after acknowledging receipt of the above letter said: "We regret very much that we are unable to accept this order inasmuch as it was necessary for us to withdraw prices on all Stevens towels and toweling on September 1st and we have not as yet made new prices." On September 19th the Stevens Company wrote another letter enclosing a new price list which reflected a materially increased price per yard of the toweling ordered.

The briefs of both appellant and respondent are concerned chiefly with the proposition that the two letters set out in full above, and the letter of September 12th set out in part above, constituted a complete contract between the parties. The paper company contends that the letter of the Stevens Company of August 7th, when considered in the light of its first letter, constituted an offer which was accepted by the paper company in its letter of September 12th. We need not here consider whether or not this contention is correct, for the reason that on September 19th the defendant company wrote the following letter:

"J. P. Stevens & Company

"44 Leonard Street

"New York City, N. Y.

"Gentlemen:

"In answer to your letter of September 15, we would appreciate it very much if you would accept our order number 738 at the prices listed on our order, as we are obligated to make delivery to the State of Montana at the prices quoted them, and we cannot raise their price.

"Please check your price and advise if you can't accept our

order at the prices listed, as per your former quotations. Thank you.''

The reply of the Stevens Company is dated September 21st and reads as follows:

''Great Falls Paper Company

''Great Falls, Montana.

''Gentlemen:

''We have your letter of September 19th in reply to ours of September 15th, and we exceedingly regret that we are unable to accept your order at the prices listed on same. The very best price is as per our quotation of September 15th.''

And finally there appears a letter written by the paper company, dated September 21st, as follows:

''Fred J. Slenke

''40 North Street

''New York City, N. Y.

''Gentlemen:

''In answer to your letter of September 19, regarding our September 12 order number 738 to J. P. Stevens.

''Please enter our order at the prices you list in your letter, namely,

''P Brown 17c less 10% and on

''P Bleach 17½c less 10%

''Please enter this order and get the mill to make shipment just as fast as they can. Thank you.''

After receipt of this letter, the goods were shipped to the paper company. Suit was brought for the purchase price, figuring according to the higher quotation, and the counterclaim is for the difference between the price quoted originally and that quoted in the latter letter.

In the counterclaim appears the gist of the paper company's contention that an offer was made which was accepted based on the lower price, and that therefore there arose a contract binding upon both parties. If we assume that that is the case we have this situation: First, that there was a contract between the parties for the toweling at 12½c per yard for some, and 13c

per yard for the balance. After the completion of the contract, assuming there was one, the Stevens Company by its letters refused to perform at the quoted figure and instead offered to perform only at the higher price appearing in its later quotation. This brings the situation squarely within the rule to be found in *Cragin* v. *J. S. Eaton & Bro.*, 133 Miss. 151, 97 So. 532, 533, 34 A. L. R. 508, and the cases cited in A. L. R. In that case the buyer refused to take certain cross ties at the contract price but offered to take them at a reduced price. Subsequently the seller delivered the ties to the buyer at that price, and the court said: " We think, when Eaton [the seller] shipped the ties at the reduced price as per the offer made by Cragin [the buyer], he accepted the terms offered by Cragin, and thereby agreed to sell the ties at the reduced price, and when he so agreed the original contract was thereby modified, and when the modified contract was fulfilled the transaction between the parties was at an end. And that is this case. ( [*Albert*] *Mackie & Co.* v. *Dale & Sons,* 122 Miss. 430, 84 So. 453.)" The court then considered the matter of consideration for the modification and held that, since the new negotiation as to price "was merely a modification of the old contract, which took its place as a substitute, and, as held by this court, the agreement between the parties in such case is valid, and not without consideration." There are cases holding to the contrary as to consideration, but they are in the minority.

In *Goebel* v. *Linn,* 47 Mich. 489, 11 N. W. 284, 285, 41 Am. Rep. 723, cited in the note to the *Cragin Case,* supra, in 34 A. L. R. at page 513, the seller of ice to a brewing company refused to deliver at the contract price and insisted upon being paid a much larger sum. The brewing company acquiesced and gave notes for the purchase price. In a suit on the notes the defense was raised that, as to the additional price, there was no consideration. The court there said: ''If the ice company had the ability to perform their contract, but took advantage of the circumstances to extort a higher price from the necessities of

the defendants, its conduct was reprehensible, and it would perhaps have been in the interest of good morals if defendants had temporarily submitted to the loss and brought suit against the ice company on their contract. No one disputes that at their option they might have taken that course, and that the ice company would have been responsible for all damages legally attributable to the breach of its contract. But the defendants did not elect to take that course. They chose for reasons which they must have deemed sufficient at the time to submit to the company's demand and pay the increase price rather than to rely upon their strict rights under the existing contract.'' And the court held that the agreement to accept the ice at the higher price operated as a modification of the original contract, and that there was consideration for that modification. In *Cragin* v. *J. S. Eaton & Bro.*, supra, and the cases cited in the note, the courts hold that the submission on the part of the buyer or seller, as the case may be, to the demand for an increased or a lower price, is conclusive as to the party submitting to that new demand.

In *Wheeler* v. *Mabrey*, 65 Mo. 166, the court left to the jury, under proper instructions, the determination of whether under the facts in the particular case, the cattle there involved were accepted by the buyer at the original price, or at the lower price offered. But the court accepted without question the rule as to consideration for the modification.

In *Dreifus* v. *Columbian Exposition Salvage Co.*, 194 Pa. 475, 45 Atl. 370, 75 Am. St. Rep. 704, the seller refused to perform his contract at the original price. Subsequently the purchaser agreed in writing to waive his rights under the original contract and accepted the steel in question at the higher price. The court held there was consideration for the modification of the contract.

In *Pitkin-Holdsworth Worsted Co.* v. *Meislin*, D. C., 254 Fed. 595, 597, the court found that correspondence concerning the price of certain yarn was not sufficient to indicate an acceptance of the yarn under the higher price rather than at the orig-

inal price stated. The court, in discussing the facts and in finding as it did, said: "His [the buyer's] conduct throughout * * * shows that he at all times insisted that plaintiff [the buyer] must carry out [original contract] according to its terms * * *. If defendant had signed [a release and compromise agreement] * * * this might have been construed as a cancellation of the * * * order." The court apparently proceeded on the assumption that, had the facts not shown that the buyer stood on the original agreement, a modification would have existed and that it would have operated to waive the buyer's rights under the original contract. (See, also, 55 C. J. 228.)

In this case there can be no question but that what is said in *Cragin* v. *J. S. Eaton & Bro.*, supra, and other cases cited, applies. After being notified by the Stevens Company that it could not furnish the goods at the price originally quoted, the paper company in its letter of September 19th wrote: "We would appreciate it very much if you would accept our order * * * at the prices listed," and "Please check your prices and advise if you can't accept our order at the prices listed." This language does not suggest that the paper company intended to stand on its original agreement, if there was one. Then on September 21st, without waiting for the receipt of the reply of the Stevens Company, the paper company wrote the letter of that date quoted above, in which no mention is made of an existing contract, nor of an intention to hold the Stevens Company to that contract, but instead said:

"In answer to your letter of September 19th [the one in which the Stevens Company stated it could not perform at the original quoted price] regarding our September 12th order * * *.

"Please enter our order at the prices you list [the increased prices] * * *.

"Please enter this order and get the mill to make shipment as fast as they can."

Assuming, then, that the first correspondence between the companies constituted an offer which was accepted within time,

yet the entry of the order under the circumstances at the advanced prices constituted the modification of the original agreement under which the paper company is bound.

The judgment is reversed and the cause remanded with direction to enter judgment in favor of plaintiff in accordance with what is said herein. The opinion heretofore promulgated is withdrawn, and the petition for rehearing is denied.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN and ANDERSON concur.

MR. JUSTICE MORRIS:

I dissent. The general rule relating to price quotations has no application here by reason of the particular circumstances involved. The plaintiff was advised by the defendant's letter of August 3, 1939, that the quotation of the price was desired as the basis for a bid for a state contract, and one of plaintiff's salesmen who took part in the negotiations testified that he knew that the prices submitted to the defendant were for the purpose of preparing the state bid. The plaintiff was at liberty to submit prices for defendant's purpose or decline to do so, and if plaintiff desired that a time limit be fixed during which the quotations submitted might be relied upon, it should have been so stated in its letter wherein the quotations were submitted. When it acted on defendant's proposal and submitted its quotations and fixed no time limit, the defendant was entitled to rely upon the quotations for a reasonable time or until withdrawn. The general rule as to what is a reasonable time as between an offer to sell and an acceptance is very elastic, depending on the facts in each particular case. "Reasonable time is so much time as is necessary under the circumstances to do conveniently what the contract or duty requires should be done in a particular case." (*Henderson* v. *Daniels,* 62 Mont. 363, 205 Pac. 964. See, also, *In re Sternberg,* D. C., 300 Fed. 881; *Lund* v. *St. Paul, etc., Ry. Co.,* 31 Wash. 286, 71 Pac. 1032, 61 L. R. A. 506, 96 Am. St. Rep. 906; *Smith* v. *Pelton Water Wheel Co.,* 151 Cal. 394,

90 Pac. 934; *Colfax County* v. *Butler County*, 83 Neb. 803, 120 N. W. 444; *Kansas Flour Mills Corp.* v. *Joaquin Grocery Co.*, Tex. Civ. App., 118 S. W. (2d) 459; *Hargadine-McKittrick Dry Goods Co.* v. *Reynolds*, C. C., 64 Fed. 560; *Leadbetter* v. *Price*, 103 Or. 222, 202 Pac. 104; *English* v. *Underwood*, Tex. Civ. App. 5 S. W. (2d) 1033; *Hollis* v. *Libby*, 101 Me. 302, 64 Atl. 621; *Dietrich* v. *United States Shipping Board*, 2 Cir., 9 Fed. (2d) 733; *Kelley, Maus & Co.* v. *Hart-Parr Co.*, 137 Iowa 713, 115 N. W. 490.)

In my opinion, when plaintiff submitted the prices of its goods, in response to defendant's letter of August 3, such submission constituted a continuing offer to sell as referred to in the case of *Monahan* v. *Allen*, 47 Mont. 75, 130 Pac. 768, and when the plaintiff, without having notified the defendant of its withdrawal of the quotations submitted before the defendant's offer had been accepted by the state, withdrew its offer to sell at the prices quoted after defendant's bid had been accepted by the state, such act on the part of plaintiff was a violation of its contract.

I am further of the opinion that when the defendant subsequently renewed its order at the increased prices, the new arrangement resulted in a separate and distinct contract and that, under this last mentioned contract, the defendant was liable to the plaintiff for the price of the goods under the later and higher quotation. The defendant's refusal to pay for the goods at the increased prices under this later contract and plaintiff's refusal to stand by its quotation submitted in the first instance, resulted in a violation of contract by both parties, the plaintiff under the first contract and the defendant under the second, and, while neither party is blameless in the premises, it appears to me that the district judge came much nearer rendering substantial justice between the parties than the opinion of the majority.