951 A.2d 828 (2008)
2008 ME 105
H.D. GOODALL HOSPITAL
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES.
Docket: Yor-07-717.
Supreme Judicial Court of Maine.
Argued: April 10, 2008.
Decided: June 26, 2008.
William H. Stiles, Esq. (orally), Brett D. Witham, Esq., Verrill Dana, LLP, Portland, ME, for H.D. Goodall Hospital.
G. Steven Rowe, Atty. Gen., Jane Gregory, Asst. Atty. Gen. (orally), Office of Atty. Gen., Augusta, ME, for Department of Health and Human Services.
Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.
MEAD, J.
[¶ 1] H.D. Goodall Hospital (Goodall) appeals from a judgment of the Superior Court (York County, Fritzsche, J.) in favor of the Department of Health and Human Services (DHHS) on Goodall's complaint for declaratory judgment challenging extensive delays in obtaining full reimbursement for services provided by Goodall to individuals who received assistance *829 through the MaineCare program. On appeal, Goodall contends that DHHS's failure to issue Goodall's fiscal year 2005 Interim MaineCare Settlement violates federal and state law and that we both can and must order DHHS to issue the Interim MaineCare Settlement. We affirm the judgment.

I. CASE HISTORY
[¶ 2] Goodall is a hospital in Sanford, Maine. It receives most of its revenue from three sources: private insurance, Medicare, and Medicaid. Medicaid patients comprise approximately twenty-three percent of Goodall's total patients. DHHS, through the Maine State Medicaid program known as "MaineCare," is responsible for paying Goodall for services provided to recipients of Medicaid. MaineCare is a joint federal-state program that pays for medical assistance provided to individuals of limited income. 22 M.R.S. §§ 10, 12, 3173 (2007). A State's participation in a Medicaid program such as MaineCare is voluntary. 42 U.S.C.S. § 1396 (2007). If a State elects to participate, as Maine has, it must adopt a Medicaid State Plan and comply with certain requirements and restrictions imposed by federal Medicaid statutes and regulations. 42 U.S.C.S. §§ 1396, 1396a, 1396k (2007). The State Plan must include a method for reimbursing health care providers like Goodall for the medical services they provide to MaineCare members. 42 U.S.C.S. § 1396a(a)(13)(A). Those entities, like Goodall, that choose to provide Medicaid-paid services must execute a Provider Agreement with the State. 42 C.F.R. § 431.107 (2007). There is no single set of federal Medicaid hospital reimbursement rules, so each State must establish a methodology for Medicaid hospital reimbursement. This methodology must be set forth in its State Plan. 42 U.S.C.S. § 1396(a)(13)(A).
[¶ 3] Pursuant to 22 M.R.S. §§ 3172-3193 (2007), Maine adopted a State Plan and established a three-step process for reimbursing hospitals. First, prior to a particular fiscal year, DHHS estimates the total amount of Medicaid reimbursement a hospital will be owed for the fiscal year. DHHS pays that amount throughout the year in weekly interim payments. Second, at the close of the hospital's fiscal year, DHHS issues a MaineCare Interim Settlement based on cost data in the hospital's as-filed (but un-audited) Medicare cost report.[1] Third, DHHS issues a MaineCare Final Settlement after it receives both the Notice of Program Reimbursement and the audited Medicare cost report from Medicare.
[¶ 4] Goodall executed the latest version of its Provider Agreement with DHHS on October 29, 1993. The Agreement states that reimbursement by DHHS to Goodall for Medicaid expenses will proceed based on the above-described three-step process. Both parties acknowledge that the three-step process was the operative method of reimbursement for the time period covered by this lawsuit.
[¶ 5] During Goodall's fiscal year 2005, which ran from June 1, 2004, through May 31, 2005, DHHS made periodic interim payments to Goodall totaling $2,977,752. Goodall filed its fiscal year 2005 Medicare cost report with the Medicare program on either October 31 or November 1, 2005, and forwarded a copy to DHHS. At this point, DHHS had all of the information necessary to issue Goodall's fiscal year 2005 Interim Settlement. Issuing this Settlement would require DHHS to pay *830 Goodall approximately $2,211,293, representing the difference between the periodic interim payments and DHHS's actual payment obligation based on Goodall's cost report. On January 18, 2006, DHHS received a copy of Goodall's audited cost report for its fiscal years 2004 and 2005.
[¶ 6] In 2006 DHHS recognized that it did not have the handing to continue to make Interim and Final Settlement payments. Maine's Governor and the DHHS Commissioner conferred with the Legislature and Maine Hospital Association in an effort to agree upon a timetable by which Interim and Final Settlements could be issued. In a letter to the Maine Hospital Association dated October 11, 2006, the Governor set forth the terms of an agreement that included a schedule by which Maine hospitals would be paid for outstanding MaineCare Settlements.
[¶ 7] As of April 10, 2008, DHHS acknowledges that it had not issued Goodall's fiscal year 2005 Interim MaineCare Settlement. As a result, Goodall has been incurring interest by resorting to a commercial line of credit in order to continue operating and providing services.
[¶ 8] In November 2006, Goodall filed a complaint for declaratory judgment, petition for review of failure or refusal of agency to act, and motion to specify course of proceeding. After oral argument in late 2007, the Superior Court entered judgment for DHHS. The court found that DHHS had not adopted and was not required to adopt any payment deadlines. It found that all of the regulations that DHHS adopted "studiously avoid[ed] placing any deadlines for the issuance of Interim or Final Settlements." The court concluded that it had no authority to order further payments of Interim or Final Settlements. On December 20, 2007, the court denied Goodall's subsequent motion for reconsideration. Goodall's appeal to us followed.

II. DISCUSSION
[¶ 9] We review statutory interpretation de novo as a question of law. State v. Thongsavanh, 2007 ME 20, ¶ 27, 915 A.2d 421, 427. As an initial matter, we find that DHHS is prohibited by state law from issuing Goodall's 2005 Interim Settlement until other payments have been made:
[T]he Department of Health and Human Services shall, when carrying out final and interim settlements of payments to hospitals for services provided to MaineCare members, pay all final settlements for hospital fiscal years 2003 and earlier prior to paying interim settlements for services for hospital fiscal years 2005 and later.
P. & S.L. 2007, ch. 19, § 1 (effective Sept. 20, 2007).
DHHS asserts that it has not yet paid all such final settlements, and Goodall, in its reply brief, does not challenge this assertion.
[¶ 10] Beyond that, we are satisfied that the federal Medicaid payment regulations and procedures providing specific time periods for payment do not govern. Goodall argues that 42 C.F.R. § 447.45(d) (2007), the "Medicaid Timely Payment Regulation," requires DHHS to issue Goodall's Interim Settlement within one year after receiving Goodall's as-filed cost report. In response, DHHS argues that it has expressly repudiated applicable regulations that call for a specific deadline for payment, including section 447.45(d). It also argues that it cannot in any event adopt them by reference. Goodall is unable to convincingly deflect these rebuttals.
*831 [¶ 11] Similarly, no binding period for payment can be gleaned from the State Medicaid Regulations or statutes. Goodall's argument that 5 M.R.S. §§ 1551-1558 (2007) apply to require payment within twenty-five days of DHHS's receipt of Goodall's cost report is not persuasive. Section 1551 pertains to the payment of "invoices," and Goodall's reimbursement for services is not done on an invoice basis. Rather, the reimbursement method is as DHHS suggests, a regulatory scheme that includes prospective payments, hospital billing forms, DHHS remittance statements, cost reports, and other additional information. Furthermore, it is the MaineCare Benefits Manual that governs payments. That manual, as presented in the record, does not provide for a specific period for payment.
[¶ 12] We look, therefore, within the four corners of the Provider Agreement for provisions dealing with terms of payment. We find no binding period for payment therein, either express or implied. Were this a contract between private parties, we might be able to infer an intent to be bound to pay by a reasonable time. See Franklin Paint Co. v. Flaherty, 139 Me. 330, 331, 29 A.2d 651, 652 (1943); Hollis v. Libby, 101 Me. 302, 309, 64 A. 621, 624 (1906); Howe v. Huntington, 15 Me. 350, 355-56 (1839). We do not infer such an intent where the party to be bound is the State discharging its governmental duties. Accordingly, the Superior Court correctly concluded that it could not declare, in the context of a Declaratory Judgments Act proceeding, that the failure of DHHS to issue the fiscal year 2005 interim Maine Care settlement violated state or federal law. Further, particularly in light of P. & S.L. 2007, ch. 19, the Superior Court correctly declined to enter an order compelling DHHS to issue payment or otherwise act upon Goodall's demands.
The entry is:
Judgment affirmed.
NOTES
[1] Despite the continuing requirement for the filing of Medicare cost reports, Maine's system of Medicaid reimbursement is distinct from Medicare methodology.